IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

KENDALL TRENT BROWN,

                    Plaintiff,

          Vs.                                        No. 07-3062-SAC

GLEN F. KOCHANOWSKI,
(fnu) NALLS, RANDALL MAIN,
TINA MILLER, DEBORAH PRICE,
(fnu) AUGUSTINE,

                    Defendants.


MEMORANDUM AND ORDER

          Kendall Trent Brown filed a 42 U.S.C. § 1983 suit for damages in

March of 2007 claiming that while he was incarcerated in the Saline County

Jail, his mail was mishandled and he was the victim of postal fraud committed

by the Sheriff of Saline County, Kansas, Glen F. Kochanowski, and other jail

staff. After issuing a show cause order and receiving supplemental and

amended pleadings from Mr. Brown, this court dismissed his action for failure

to state a cognizable constitutional claim. On appeal, the Tenth Circuit affirmed

the dismissal of Mr. Brown's claim that he was denied access to the courts by

the different alleged incidents of mail mishandling and his claim that he was

entitled to damages for depression and emotional distress. *Brown v. Saline

County Jail*, 303 Fed. 678, 2008 WL 5257136 (10th Cir. Dec. 18, 2008). The

Tenth Circuit, however, also reversed the dismissal insofar as the district court had failed to consider whether Mr. Brown's allegations of mail mishandling had stated a First Amendment claim for freedom of speech and whether Mr. Brown had alleged a state law fraud claim for postal fees charged on mail that was not sent. *Id.* After the remand and 165 docket entries later that included numerous procedural motions, the pretrial order and a dispositive motion, the case is ripe for this final ruling on all pending matters.

**PENDING PROCEDURAL MOTIONS**

Mr. Brown has two pending motions for appointment of counsel (Dks. 180 and 189), and he has included requests for counsel in a number of his other pleadings. Mr. Brown has made repeated requests for counsel arguing his lack of legal training and his difficulties in pursuing this action while incarcerated. The court consistently has denied those requests based on the limited nature of his claims, his apparent ability to present them, and the lack of complex issues. *See, e.g.,* (Dk. 177, pp. 2-3; Dk. 84, pp. 1-2; Dk. 59, pp. 5-6). In his most recent motions, Mr. Brown says in one that he needs counsel because he "is not able to make stable decisions," (Dk. 180, p. 10), and in the other that he needs counsel's help in seeking reconsideration of the court's order denying him injunctive relief, in opposing the defendant's motion for summary judgment, and in conducting additional discovery (Dk. 189).

In this civil suit, Mr. Brown has no Sixth Amendment right to

2

counsel, and it is left to this court's sound discretion under 28 U.S.C. § 1915(e) to appoint counsel for him as an indigent party. *Johnson v. Johnson,* 466 F.3d 1213, 1217 (10th Cir. 2006). The discretion is exercised in consideration of "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004) (citations omitted). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Id.* (citation and internal quotation marks omitted). The district court's exercise of its discretion is only overturned in "those extreme cases where the lack of counsel results in fundamental unfairness." *Id.*

The pretrial order in this case "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). The pretrial order here has framed and presented the plaintiff's claims in final form, and these claims are not so complex or factually detailed as to warrant appointing counsel. (Dk. 156, pp. 3-5). The pretrial order closed discovery on November 30, 2011, as complete, except for that done by the mutual agreement of the parties. (Dk. 156, p. 11). The plaintiff has responded directly to the pending summary judgment motion showing an ability to understand the issues and to present his position on the facts and the law. In the context of the plaintiff's filings and participation to date, the plaintiff's general allegations do not persuade the

3

court that he lacks the mental capacity to proceed *pro se*. As will be discussed later in this order, the plaintiff's claims are riddled with assumptions and speculation that rob them of merit sufficient for appointing counsel. The motions for appointment of counsel are denied.

Mr. Brown next moves for an "ex-parte hearing" to ask the court for an investigator to conduct additional discovery on his behalf by contacting the U.S. Department of Justice, the Kansas Appellate Courts, his former criminal defense attorney, Joseph Allen, and the Larned State Hospital for the purpose of obtaining or subpoenaing records. (Dk. 188). In his reply memorandum, Mr. Brown alternatively renews yet another request for appointment of counsel. The defendants oppose any additional discovery, since the time for discovery was closed months earlier as stated in the pretrial order. Mr. Brown offers no grounds of manifest injustice for modifying the pretrial order's deadlines. For that matter, Mr. Brown's motion lacks both legal authority and a factual foundation for its unusual request. The motion for "ex-parte hearing" is denied, and his alternative request for appointment of counsel is denied for the same reasons stated above.

Also pending is Mr. Brown's motion for the court to reconsider (Dk. 181) its order (Dk. 177) that denied his request for an injunction or temporary restraining order (Dk. 169) as supported by his memorandum and declaration (Dks. 170 and 171) and as amended and supplemented by other filings (Dks.

4

172 and 173). In that prior order, the court understood the plaintiff was seeking injunctive relief "to prevent any future retaliation . . . and to require their compliance with his constitutional rights," to return "his personal and legal property," to restore the classification level of a Kansas Department of Corrections ("KDOC") facility, to leave him alone, and to shut down the Saline County facility "pending an outside investigation and the replacement of all staff." (Dk. 177, pp. 3-4). The court held:

> The court finds plaintiff's sweeping concerns regarding the current conditions of his confinement in Saline County and KDOC facilities are speculative at best, and wholly fail to present any basis for finding that plaintiff is facing irreparable harm if this motion is not granted. Plaintiff also fails to establish that granting the requested relief would be consistent with public policy. Finding no clear and unequivocal showing that plaintiff is entitled to the immediate injunctive relief and restraining order being requested, the court denies plaintiff's motion.

(Dk. 177, p. 5). This order qualifies as a non-dispositive order under D. Kan. Rule 7.3(b) that requires a motion to reconsider to be "based on:   (1) an intervening change in controlling law;  (2) the availability of new evidence;  or (3) the need to correct clear error or prevent manifest injustice." *See also Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).   Such a motion does not require that a court simply revisit the same issues and rulings or entertain matters which could have been raised earlier. *Id*. Put another way, a party is not to pursue such a motion in order to rehash previously rejected arguments or to offer new legal theories or facts. *Achey v. Linn County Bank*, 174 F.R.D. 489, 490 (D. Kan. 1997). Nor is a motion to reconsider "a second

chance for the losing party to make its strongest case or to dress up arguments that previously failed." *Voelkel v. Gen. Motors Corp.*, 846 F. Supp. 1482, 1483 (D.Kan.), *aff'd*, 43 F.3d 1484 (10th Cir.1994).

The plaintiff's motion to reconsider is a simple repetition of his sweeping concerns, allegations and call for an investigation to protect inmates from what he categorizes as corruption, discrimination and retaliation. Instead of describing or identifying the availability of any new evidence, Mr. Brown asks the court to pore over his prior lengthy presentation of evidence (Dk. 172) and to draw its own impressions. Mr. Brown pleads for the government's help in proving his allegations that are no more than his own speculation at this point. There is nothing in his motion that argues an intervening change in the controlling law or that even propounds an arguable manifest injustice or clear error. The nature and scope of this lawsuit is not the proper vehicle for Mr. Brown to pursue his wide-ranging allegations and goals for better treatment of and facilities for him and his fellow inmates. His motion to reconsider is denied.

There are two motions related to the plaintiff's filing of a "memorandum" (Dk. 186) on March 29, 2012, that is either a response to the defendants' motion for summary judgment filed late or a surreply filed without leave. On March 14, 2012, the court received from Mr. Brown a 12-page document that was filed consistent with its title as his response (Dk. 179) to the defendants' summary judgment motion (Dk. 166). The defendants then

6

filed on March 26, 2012, their reply in support of summary judgment.   (Dk. 184). Three days later, March 29, 2012, the court received from Mr. Brown another memorandum in opposition to summary judgment (Dk. 186), that is the subject of the defendants' "motion to strike surreply" (Dk. 187) filed April 4, 2012, and the plaintiff's motion for leave of the court (Dk. 190) filed April 12, 2012.

As permitted by D. Kan. Rule 7.1, parties may file a dispositive motion, a response, and a reply. "There is no provision for the filing of a surreply absent leave of court." *First Savings Bank, F.S.B. v. U.S. Bancorp*, 184 F.R.D. 363, 367 (D. Kan. 1998). A pro se party's title of "response" to a memorandum does not protect it from being stricken if it was filed without leave of the court. *Ferluga v. Eickoff*, 408 F. Supp. 2d 1153, 1154 n. 1 (D. Kan. 2006). Courts generally do not allow a surreply unless the reply brief includes "new information which the responding party needs an opportunity to address." *C.T. v. Liberal School Dist.*, 562 F. Supp. 2d 1324, 1329 (D. Kan. 2008) (citation omitted).

The court understands the plaintiff intended his filing to be only a supplement to his prior response and to not be a surreply. The plaintiff has filed later a motion seeking permission to file what he regards as his supplemental brief. (Dk. 190). While *pro se* pleadings are construed liberally, courts still enforce "the same rules of procedure."   *Green v. Dorrell*, 969 F. 2d 915, 917

(10th Cir. 1992), *cert. denied*, 507 U.S. 940 (1993). Reading together this motion (Dk. 190) and plaintiff's response (Dk. 192) to the motion to strike, the court understands the plaintiff to be arguing the lack of legal reference materials, difficulty in maintaining his personal possessions and legal materials during moves between facilities, and his lack of understanding about these procedural rules. Under the unique mitigating circumstances of this case, the court will grant the plaintiff leave to file his memorandum (Dk. 186) as a supplement to his earlier response (Dk. 179) to the defendant's motion for summary judgment. The court denies the defendants' motion to strike.

The plaintiff filed yet another supplement to his response nearly two weeks later. (Dk. 191). This filing also prompted the defendants to file a motion to strike. (Dk. 195). In their motion, the defendants point out that the "plaintiff has now filed upwards of five separate pleadings in response to the summary judgment," and rightly argue this far exceeds anything contemplated by the federal rules. (Dk. 196, p. 2). The plaintiff's rambling response offers no new grounds to justify one more bite at the apple. The court's review of the plaintiff's supplemental brief provides no new evidence or arguments relevant to the pending summary judgment motion. The defendants' motion to strike the plaintiff's supplement brief (Dk. 191) is granted.

**MOTION FOR SUMMARY JUDGMENT**

Rule 56 authorizes judgment without trial "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Substantive law governs the elements of a given claim or defense and reveals what issues are to be determined and what facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is one which would affect the outcome of the claim or defense under the governing law. *Id*. An issue is "genuine" if the evidence permits a reasonable jury to return a verdict for the nonmoving party. *Id*.

On summary judgment, the initial burden is with the movant to point out the portions of the record which show that the movant is entitled to judgment as a matter of law. *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992), *cert. denied*, 506 U.S. 1013 (1992). Instead of disproving a claim or defense, the movant need only show "a lack of evidence" on an essential element. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). If the movant meets that burden, the non-movant must come forward with specific facts based on admissible evidence from which a rational fact finder could find in the non-movant's favor. *Id*. The non-movant's "burden to respond arises only if the" movant meets its initial burden of production. *Neal v. Lewis*, 414 F.3d 1244, 1248 (10th Cir. 2005)

(citation omitted). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether the evidence is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. at 251–52.

A pro se litigant's pleadings are construed liberally and judged against a less stringent standard than pleadings drawn by attorneys. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court is to "make some allowances for 'the pro se plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.'" *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F. 2d at 1110). However, "it is not the proper function of the district court to assume the role of advocate for the pro se litigant." *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). The court is not to "construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991). The court does not assume the responsibility of "searching the record" in favor of the plaintiff. *Garrett*, 425 F.3d at 840. Nor does the plaintiff's pro se status excuse him from the burden of coming forward with some "specific factual support," other than conclusory allegations, to support his claims. *Douglass v. General Motors Corp.*, 368 F. Supp. 2d 1220, 1228 (D. Kan. 2005) (citation omitted),

*aff'd*, 188 Fed. Appx. 656 (10th Cir.), *cert. denied*, 549 U.S. 1080 (2006).

That the plaintiff is pro se also does not exempt him from complying with the essential federal rules of civil procedure, including Rule 56, *Birbari v. United States*, 2012 WL 2087180 at *3 (10th Cir. Jun. 11, 2012), or a court's local rules, *Calia v. Werholtz*, 426 F. Supp. 2d 1210, 1214 (D. Kan. 2006). In his supplemental memorandum opposing the defendant's summary judgment motion, (Dk. 186), the plaintiff "answers" the defendant's statement of facts as if they were allegations. Ignoring the requirements of D. Kan. Rule 56.1(b)(2), the plaintiff then fails in many instances to offer any supporting citations to admissible evidence of record. He offers no "section containing a statement of material facts as to which the party contends a genuine issue exists."   D. Kan. Rule 56.1(b)(1). His opposing memorandum fails to comply with the basic terms of D. Kan. Rule 56.1(b). Additionally, the plaintiff's memorandum is replete with allegations and speculation, neither of which is supported by affidavits, declarations under penalty of perjury or other admissible of evidence as required by D. Kan. Rule 56.1(d). Thus, the court will deem the movant's statement of facts as admitted in those parts that the plaintiff has not specifically controverted in compliance with the court's rules. *See Vasquez v. Ybarra*, 150 F. Supp. 2d 1157, 1160 (D. Kan. 2001). Moreover, the plaintiff did not file any affidavits or submit any other admissible evidence to refute the evidence filed by the defendants in support of their

motion for summary judgment. "[A] plaintiff cannot rely solely on an unverified complaint, and . . . summary judgment is proper where a plaintiff fails to challenge the affidavits or other proof filed by a defendant in support of its motion." *Lopez-Bignotte v. Ontivero*, 42 Fed. Appx. 404, 408 (10th Cir. 2002) (quoting *Parkinson v. California Co.*, 233 F.2d 432, 438 (10th Cir.1956)); *see United States v. Distefano*, 279 F.3d 1241, 1245 (10th Cir. 2002).

## SUMMARY OF CLAIMS

The pretrial order lays out the following theories of plaintiff's recovery under the First Amendment: (1) "failure to process outgoing mail," (2) "monitoring his mail in a discriminatory manner," (3) "monitoring his mail as a form of punishment and/or discipline," and (4) "not allowing Plaintiff to take his legal mail to Larned State Hospital when transferred for a 60 day stay." (Dk. 156, p. 5).1 The plaintiff's theory of recovery on the state-law claim of fraud is "charging for mail that was not processed." *Id.* The defendants seeks summary judgment arguing that the evidence shows the plaintiff's mail was sent and plaintiff's speculative testimony cannot sustain a verdict, that the same mail policy was applied to all inmate mail, that plaintiff did not exhaust his administrative remedies, that the plaintiff sustained no constitutional violation

---

1 The plaintiff's factual contentions in the pretrial order seem to exceed these theories of recovery and include such claims as (1) "rules that limit[] the communication of attorney and client," and (2) disallowing inmates to be present when their mail was inspected. In this order, the court will address briefly these additional contentions.

from any wrongful interference with mail, and that the plaintiff has no proof to sustain a fraud claim. The court intends to address first the exhaustion requirement and then discuss the individual claims under the relevant law and uncontroverted facts of record.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U .S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citation omitted). The "inmate may only exhaust by properly following all the steps laid out in the prison system's grievance procedures." *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). Beginning but not completing the grievance process is not exhaustion and will bar a § 1983 claim. *Id.*

As far as the required contents of a grievance, the institution must provide notice of these requirements or the "grievance satisfies § 1997e(a)'s exhaustion requirement so long as it provides prison officials with enough information to investigate and address the inmate's complaint internally." *Kikumura v. Osagie*, 461 F.3d 1269, 1285 (10th Cir. 2006), *overruled on other grounds as recognized in Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008).

13

"[A] grievance will satisfy the exhaustion requirement so long as it is not so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally."   *Id.* (internal quotation marks and citation omitted).

The PLRA speaks only to "available" remedies, so "if an administrative remedy is not available, then an inmate cannot be required to exhaust it." *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011). A remedy is "available" when "capable of use for the accomplishment of a purpose." *Id.* (internal quotation marks and citation omitted). It follows that "an administrative remedy is not 'available' under the PLRA if 'prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of the administrative remedy.'" *Id.* (quoting *Little v. Jones*, 607 F.3d at 1250). "[C]ourts . . . are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). Thus, the administrative process can be called "available" if the prisoner is deterred from using it "through threats or intimidation." *Tuckel*, 660 F.3d at 1252-53.

It falls on the defendants to prove the affirmative defense that the plaintiff did not exhaust his administrative remedies. *Id.* at 1254. "Once a defendant proves that a plaintiff failed to exhaust, . . . , the onus falls on the plaintiff to show that remedies were unavailable to him as a result of

intimidation by prison officials. Plaintiffs should be afforded an opportunity to counter the exhaustion defense in this manner regardless of whether the issue is asserted by defendants or raised by the court sua sponte." *Id.* (citations omitted). In countering with the unavailability of administrative remedies, a prisoner cannot simply rely on mere allegations or forms that lack specificity and that offer only conclusory allegations unsupported by proper Rule 56 material. *Elrod v. Walker*, 2011 WL 6372881 at *5-*6 (D. Kan. 2011), *aff'd*, ---Fed. Appx.--- (10th Cir. Sep 7, 2012). Allegations without the substantiation of admissible evidence do not create a material issue of fact that would prevent summary judgment on the availability and exhaustion of administrative remedies. *Id.*

The defendants argue that Saline County Jail had administrative remedies available to Mr. Brown that allowed him to submit a grievance on an "Inmate Request" form completed and addressed to the Jail Administrator. Copies of the prisoner's inmate handbook attached to the plaintiff's pleadings show a policy directing inmates to submit grievances on the inmate request form "through the chain of command to the Jail Administrator." (Dk. 186, Ex. 4, p. 40). The defendants attach a separate "Saline County Sheriff's Office Corrections Policy and Procedure" on prisoner grievance procedures, but the defendants do not provide a record that establishes these more detailed grievance procedures were part of the inmate's handbook or that the plaintiff

reasonably should be charged with notice or knowledge of them. The jail's detailed policy provides for the request forms addressed to the Jail Administrator to be "delivered by personnel without alteration, interference or delay to the Jail Administrator," but it also provides that "Grievances/Requests that can be handled by the Corrections Officers will be handled prior to giving the request form to the Jail Administrator." (Dk. 167-7, p. 2). The policy further requires the Jail Administrator to respond within five days by completing a "jail grievance form answer section" that includes the decision, its justification and any corrective plan. The policy also specifies that a prisoner has the right to appeal the Jail Administrator's decision "to the Sheriff or his designee for review" for a decision within ten days. *Id.*

The defendants concede that Mr. Brown "may have exhausted his administrative remedies in regard to the events of October 27, 2006," that is, his claim that the defendants failed to send his complaints to the United States Department of Justice ("DOJ"). (Dk. 167-8, p. 16). The defendants, however, contend "Brown did not exhaust his administrative remedies in regard to any of his other complaints" and that:

> There is no evidence he submitted grievance forms on the following subjects: failure to process outgoing mail; discriminatory monitoring of mail; montoring mail as punishment/discipline; prohibiting him from taking legal mail to Larned; or committing fraud by charging his inmate account for postage on letters that were never sent.

(Dk. 167-8, p. 16). The defendants' statement of facts does not support either

of these propositions. Instead, the defendant offers only the plaintiff's deposition that he was not sure whether he submitted a grievance on those claims. Because exhaustion is an affirmative defense, the defendants must first show that the plaintiff failed to file a grievance or exhaust his remedies. It is not enough that the plaintiff was unable to recall with certainty the filing of each grievance.[2] The court has reviewed copies of completed inmate request forms numbered as exhibits 6 through 87 and attached to the plaintiff's filing (Dk. 172). The court's impression is that the plaintiff did file several grievances regarding the inspection and mishandling of his mail and discriminatory practices in releasing mail.

The defendants' statement of facts show the plaintiff's social worker at the Larned State Hospital did contact the jail on the plaintiff's behalf and requested the jail to forward his legal paperwork to the hospital. The defendant also wrote the jail seeking to have his materials sent to the hospital.   The material was produced only after the plaintiff returned to the jail, and he submitted additional request forms. Based on the grievance procedure described in the inmate handbook, the court is not in a position to say as a matter of law that the plaintiff did not exhaust his remedies on this claim either.

---

[2] The plaintiff's deposition testimony reveals the defendants produced copies of the plaintiff's inmate request forms and grievances. (Dk. 167-2, p. 24, Dep. p. 140). Having apparently maintained these copies of the plaintiff's grievances, the defendants certainly are in a position to have met their initial summary judgment burden on this exhaustion issue.

When asked at his deposition about exhausting his remedies, the

plaintiff testified as follows, in relevant part:

Q. Did you write an Inmate Request Form or a grievance to the sheriff regarding the—your allegation that the jail was not sending out the mail that you had addressed?

A.   I--all right. All the request forms are—are considered our grievance.

Q.   Uh-huh.

A.   That's the only way that we can exhaust any kind of remedies. But the problem we have here is we don't get responses from the people that we're trying to talk to. So for me—in order for me to do any talking—I had to talk to a corporal, and I talked to him, Corporal Lawrence, and he said he would take care of it. Okay.

I never heard nothing back. I tried to communicate by letters to the sheriff. You know, I don't know—you know, I'm in a county jail where they told me that only way that you can correspond with anybody is by these request forms.

Well, the problem with that is we don't get responses from the people that we are trying to talk to, so that they can talk to a person. I tried every way that I could possibly think to talk to the sheriff, to talk to somebody, and the only person that came was Corporal Lawrence.

.  .  .  .

Q. Did you write a grievance to the sheriff regarding the inability of your ability to take your legal mail to Larned?

A. I'm not even sure I did that.

Q. Did you write a grievance to the sheriff regarding your complaint that they voided out mail or charged you for mail that was not sent out?

A. I'm not sure on that at all.

Q. Would you have a copy of that if you did it?

A. If I did, yes, but I don't know where—I just don't know where it—I don't know, because the reason that—all right. Let's go back to one thing here.   All right. Let me explain this to you.

.  .  .  .

It was the same thing with all the paperwork in this jail, every time I would try to correspond or write the jail up for something, it wouldn't go nowhere. And sometimes they wouldn't sign some of the request forms, because they were telling them "Don't sign it, because he might try to get a claim on you."

Q. The – you know, in the – in the Request for Production you requested all of your Inmate Request Forms, correct –

18

      A. Yes.
      Q. – and grievances and everything like that. Do you have reason to believe that they're not all here?
      A. Possibly.

(Dk. 167-2, pp. 23-24, Brown Dep. pp. 137-40). It is not evident from the face of the numerous inmate request forms attached to the plaintiff's filings (Dks. 172 and 186) that an administrative remedy policy involving a jail administrator's review and decision on grievances was available to the plaintiff. The summary judgment record does not persuade the court that there are no genuine issues of material fact regarding this affirmative defense of exhaustion.

## INDIVIDUAL LIABILITY UNDER 42 U.S.C. § 1983

      The plaintiff sues the individual defendants claiming they violated his First Amendment rights in the handling of his mail and in denying him legal materials.3 Individual capacity "suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). On civil rights claims against individual defendants, the law is settled that a plaintiff must prove a defendant's personal participation or involvement in the alleged constitutional violations. *Trujillio v.*

_____

3Among his factual contentions in the pretrial order, the plaintiff purports to sue the defendants "in their official and individual capacities." (Dk. 156, p. 5). The plaintiff seeks only monetary relief in the pretrial order. *Id.* at 10-11. "It is well-settled that a request for money damages against a state defendant in his official capacity is generally barred by the Eleventh Amendment to the Constitution." *Hunter v. Young*, 238 Fed. Appx. 336, 338 (10th Cir. 2007) (citing *White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996)) (sovereign immunity bars monetary claims against county detention center officers). The defendants are entitled to summary judgment on all official capacity claims.

*Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006) ("A defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established"). A defendant is personally involved in an alleged constitutional violation only if an "affirmative link" exists between his or her conduct and the described violation. *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001).

Section 1983 does not sustain supervisory liability on a theory of respondeat superior. *Worrell v. Henry*, 219 F.3d 1197, 1214 (10th Cir. 2000), *cert. denied*, 533 U.S. 916 (2001). "Supervisors are not strictly liable for the torts of their underlings; instead, they are liable only when they 'personally participated in the alleged violation." *Bryson v. Gonzales*, 534 F.3d 1282, 1289 (10th Cir. 2008) (internal quotation marks and citation omitted). A § 1983 plaintiff may pursue "liability upon a defendant-supervisor who creates, promulgates, [or] implements . . . a policy . . . which subjects, or causes to be subjected that plaintiff to the deprivation of any rights . . . secured by the Constitution." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 131 S. Ct. 2150 (2011). "[T]o establish supervisory liability, a plaintiff must show that '(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.'" *Brown v. Montoya*,

20

662 F.3d 1152, 1164 (10th Cir.2011) (quoting *Dodds*, 614 F.3d at 1199).

While this element will be addressed in the following section, the court notes the plaintiff has conceded in his deposition and in these summary judgment pleadings that he has not alleged any individual wrongdoings committed by the defendant Randall Main and that he has no proof of any. (Dk. 167-2, Dep. at p. 134; Dk. 186, p. 19). Summary judgment is granted for the defendant Main on all claims.

FIRST AMENDMENT RIGHTS—HANDLING OF PRISONER'S MAIL

As with his other claims, the plaintiff cannot prevail against the defendants' summary judgment motion unless he establishes sufficient proof of the essential elements to his claim for which he has the burden of proving. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Failure to prove one essential element "necessarily renders all other facts immaterial." *Id*. at 323. On this claim, it is the plaintiff's burden to prove (1) "that his mail was not delivered" or was mishandled, (2) that the named defendant "was responsible for such nondelivery" or mishandling and (3) "that . . . [the named defendant] acted intentionally or with deliberate indifference. *Treff v. Galetka*, 74 F.3d 191, 195 (10th Cir. 1996) (citations omitted).[4]

_____

4 *see also Scott v. Hilde*, 2011 WL 4486205 at *5 (D. Colo. Sep. 2, 2011) (Elements of First Amendment claim of mishandling an inmate's mail: (1) inmate's "mail was mishandled;" (2) "the particular named Defendant was responsible for the mishandling;" (3) "the mishandling was purposeful; and" (4) "there is plausible inference to be drawn that the basis for that mishandling was

"The Supreme Court has made it clear that prison inmates retain all First Amendment rights not incompatible with their status as prisoners, ' or with the legitimate penological objectives of the corrections system.'" *Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009) (quoting *Pell v. Procunier*, 417 U.S. 817, 832 (1974)). On the other hand, federal courts typically "have adopted a broad hands-off attitude toward problems of prison administration" that springs from the substantial hurdles facing prison administrators in carrying out their duties of "maintaining internal order and discipline, . . . securing their institutions against unauthorized access or escape, and . . . [of] rehabilitating." *Procunier v. Martinez*, 416 U.S. 396, 404-05 (1974); *see United States v. Gordon*, 168 F.3d 1222, 1228 (10th Cir.) ("In the case of unprivileged incoming and outgoing mail, regulation by prison officials is essentially an administrative matter in which the courts will not intervene."), *cert. denied*, 527 U.S. 1030 (1999). So, "prisoners' rights may be restricted in ways that 'would raise grave First Amendment concerns outside the prison context.'" *Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010) (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)). It is enough that prison officials "reasonably exercised their judgment as to the appropriate means of furthering penological goals," for the courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining

not reasonably related to a legitimate penological interest." (citation omitted), *adopted*, 2011 WL 4485938 (D. Colo. Sep. 27, 2011).

legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzeta*, 539 U.S. 126, 132 (2003) (citing in part *Pell v. Procunier*, 417 U.S. at 926-27).

<u>Failure to Process Outgoing Mail</u>

Under this theory of recovery, the plaintiff alleges the following claims. On October 27, 2006, Officer Nalls tampered with the contents of the plaintiff's mail when he asked for her help in sending it express mail. Suspicious that his mail had been tampered with, Mr. Brown asked for his letter back, but Officer Nalls said the letter already had been mailed. For his second claim, plaintiff alleges he wrote other letters to the DOJ that the defendants failed to mail.   Finally, the plaintiff alleges he addressed letters to the Kansas Appellate Courts that never reached the courts.

As for the events of October 27, 2006, Mr. Brown testified that he had put four green complaint cards5 and a letter into a legal-sized envelope addressed to the DOJ. Because he had folded the cards, he described his envelope as thick and bulky. For this letter to go by express mail, Officer Nalls told Brown that she needed to weigh it. According to Brown, when Officer Nalls returned after weighing his letter, it did not appear to be as thick or bulky.

_____

5 Mr. Brown described the complaint cards as going to the DOJ, then to the Attorney General of the United States, and then into the court whereby "the FBI fixes whatever the situation is."   (Dk. 167-2, p. 6; Dep., p. 18).   "I would have gotten paid seventy thousand dollars per card, that would have been after everything was taken care of." *Id*. Mr. Brown could not recall the information he included on those cards, and he kept no copies of the cards. (Dep., p. 19).

Brown says he also noticed for the first time handwriting on the envelope that appeared to be his. Brown, however, did not check the contents of his envelope and did not say anything to Officer Nalls about any perceived changes. Instead, his envelope was placed inside the express mail envelope and given to the officers for mailing. A short time later, Brown sent a written request to the "mail lady" writing that he had changed his mind and "want[ed] that letter back." (Dk. 167-5, p. 27). The officer's response was that it was "too late." *Id*. Brown immediately submitted a second inmate request that threatened a complaint for mail fraud if the letter was not returned. (Dk. 167-5, p. 28). The officer wrote a different response:   "You asked for it to be sent out a certain way and we followed your instructions. I am sorry that after we had done it you changed your mind. After it's mailed we have no control over it." *Id*.

Mr. Brown's testimony about the apparent change in the envelope is his only evidence that the contents of his letter may have been tampered with. This testimony is little more than speculation and bald assertions. A court cannot deny summary judgment on the plaintiff's "speculative hope" of finding some evidence that might prove his claim of mishandling. *T & M Distrib., Inc. v. United States*, 185 F.3d 1279, 1285 (Fed. Cir. 1999) (a plaintiff "cannot defeat summary judgment . . . with just bald assertions and speculation of wrongful conduct."). Mr. Brown testified he could not recall the contents or substance of what was written on the complaint forms. He did not retain any copy or record

of the completed forms. His claim of mail mishandling is based entirely on his presumption that Officer Nall must have taken out the complaint forms because his original envelope was thinner and his own handwriting was on it. He has no other evidence that the defendants failed to send out the full contents of his original letter.

The defendants include in the summary judgment record a copy of Mr. Brown's correspondence kept by the DOJ that was sent by express mail and postmarked as paid on October 27, 2006. (Dk. 167-4, p. 13). The envelope was addressed to the DOJ's Civil Rights Section, and it was received on October 30, 2006. *Id.* at 12. The contents of the envelope were a five-page handwritten letter bearing Mr. Brown's signature. The letter lays out numerous complaints about the conditions existing in the Saline County Jail and about the proceedings in his pending criminal case. *Id.* at 3-7. With this letter, there was a completed three-page discrimination complaint form for "Title II of the Americans with Disabilities Act/Section 504 of the Rehabilitation Act of 1973" that alleged the Saline County Jail and the Saline County District Court had discriminated against Mr. Brown. *Id.* at 8-10. The plaintiff does not argue nor come forward with any evidence to suggest that what the DOJ received on October 30, 2006, did not constitute the full contents of his original envelope on October 27, 2006.

The plain impression is that the four missing green complaint form

cards are "mere phantoms" over which the plaintiff wants to base a constitutional claim. *Pahcheka v.* Ward, 143 Fed. Appx. 128, 136 (10th Cir. 2005). Other than the plaintiff's recollection on the changed appearance of his envelope, the court has no reasonable basis for inferring that what the DOJ did receive-- a letter and a completed complaint form--on October 30, 2006, was lacking some of what the plaintiff originally put into his envelope—a letter and complaint form cards. On this record, the court cannot draw any reasonable inference from the plaintiff's speculative testimony that his mail was not delivered or that the named defendants were responsible for such non-delivery. The plaintiff's testimony is too speculative, argumentative and conclusory for a rational fact finder to find in his favor on these elements. The defendants are entitled to summary judgment on this claim.

On the plaintiff's second and third claims, failing to process mail to the DOJ and to the Kansas appellate courts respectively, his evidence is even thinner. Mr. Brown testified about these claims relying on Saline County Jail's inmate account activity summary for him and the DOJ's records of the correspondence received from him. Based on his review of the Jail's inmate activity account summary for the period between approximately April of 2006 and December 11, 2008, Brown finds that only 22 envelopes addressed to the DOJ were processed. According to Brown, the DOJ records from the same period showed it had received only 55 documents from him. Because he

believes that he sent a 100 or more letters to the DOJ, Brown concludes the

cited records prove his mail was not delivered. When asked for his proof that he

mailed 100 or more letters to the DOJ, Brown said he had copies of them or a

record of mailing them but he did not know "where that stuff is."   (Dk. 167-2,

pp. 11-12; Dep., pp. 61-62). As for proof that the defendants failed to send his

letters addressed to the Kansas appellate courts, Brown first testified that he

had sent lots of letters to the courts but he did not receive responses to all of his

letters. Brown also pointed to a letter received from Chief Deputy of the Kansas

Appellate Courts dated August 11, 2008, that reads, "I have no record of

receiving complaints from you. If they were complaints against attorneys, the

information would have been forwarded to the Disciplinary Administrator's

Office . . . . Please contact that office for information regarding complaints you

may have filed against an attorney." (Dk. 83-1, p. 65). Mr. Brown

acknowledged that he had received a letter from the Office of the Disciplinary

Administrator dated May 16, 2008, indicating that the Office had received

multiple complaints from him. (Dk. 83-1, p. 62). Mr. Brown mentioned

receiving other letters from the court that suggested his prior correspondence

had never been received, but he said those letters from the court had been lost

too.

　　　　　The defendants are entitled to summary judgment on both of these

claims for failure to process outgoing mail. The plaintiff offers only his

suspicions, speculation and bald assertions in support of them. He offers no evidence of an actual letter he wrote that was not sent to the DOJ or to the appellate courts. The Chief Deputy Clerk's letter is not evidence that the defendant gave jail staff a letter that was never submitted to the postal system for delivery. *See Treff,* 74 F.3d at 196. The clerk's correspondence suggests, instead, that the clerk's office does not keep a record of complaints about attorneys but forwards them to the Disciplinary Administrator. The record certainly indicates that the Disciplinary Administrator did receive complaints from the plaintiff about his attorney. Moreover, Mr. Brown has no proof that any of the named defendants are responsible for any such letter not being delivered. The court grants the defendant's motion for summary judgment on the plaintiff's First Amendment claim for failure to process outgoing mail.

<u>Monitoring Outgoing Mail</u>

Under this theory of recovery, the plaintiff generally complains about the jail's policy on monitoring outgoing mail, challenges the monitoring as discriminatory because of his housing assignment, and alleges the monitoring as being retaliatory. "A prisoner has a constitutional right to have his outgoing mail processed for delivery, absent legitimate penological interests to the contrary."  *Gee*, 627 F.3d at 1188 (citing *Treff v. Galetka*, 74 F.3d at 195). Acknowledging that "[t]he implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of

incoming materials," 490 U.S. at 413, the Supreme Court in *Thornburgh* upheld

the *Martinez* standard for outgoing mail. *Treff*, 74 F.3d at 194-95.   This

standard justifies limiting outgoing mail if:

> First, regulation or practice in question must further an important or
> substantial governmental interest unrelated to the suppression of
> expression. . . .   Rather, they must show that a regulation authorizing
> mail censorship furthers one or more of the substantial governmental
> interests of security, order, and rehabilitation.   Second, the limitation of
> First Amendment freedoms must be no greater than is necessary or
> essential to the protection of the particular governmental interest
> involved. Thus a restriction on inmate correspondence that furthers an
> important or substantial interest of penal administration will nevertheless
> be invalid if its sweep is unnecessarily broad.   This does not mean, of
> course, that prison administrators may be required to show with certainty
> that adverse consequences would flow from the failure to censor a
> particular letter.   Some latitude in anticipating the probable
> consequences of allowing certain speech in a prison environment is
> essential to the proper discharge of an administrator's duty.

*Procunier v. Martinez*, 416 U.S. at 413-14.   Thus, if "prison officials censor

simply by indulging their personal prejudices and opinions, while purporting to

apply constitutional standards," the courts have found this an unconstitutional

practice. *Jones v. Caruso*, 569 F.3d at 267 (internal quotation marks and

citations omitted).

         The Saline County Jail's policy on outgoing mail from 2005

throughout the claimed period provided in relevant part:

> All outgoing mail must have the proper postage and a return address in
> the upper left hand corner. All outgoing mail may be sealed when given to
> the Officer. Outgoing personal mail may be opened and inspected for
> contraband at the specific directions of the Shift Supervisor for security
> considerations. The name of the inmate and address of the facility **must**
> be placed on all outgoing mail. Mail will be returned to the inmate for

proper address for the letter, if it cannot be determined which inmate wrote the letter it will be disposed of. <u>The Corrections Staff may inspect out-going mail marked as legal if they suspect it is not legal mail.</u>

(Dk. 167-6, p. 4). "The burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (citations omitted). The court cannot discern in Mr. Brown's summary judgment filings any specific arguments or proof intended to show or prove the constitutional invalidity of this policy. On its face, the policy serves a substantial governmental interest in prison security in that it expressly authorizes monitoring of outgoing personal mail based on a shift supervisor's evaluation of security considerations. The defendants are entitled to summary judgment on the plaintiff's unarticulated and unsupported challenge to the constitutional validity of this regulation.

The plaintiff also testified that the defendants discriminatorily applied this policy, that officers inspected his mail outside of his presence, and that the policy was "strictly enforced" against him and other residents of the sex pod. (Dk. 167-2, pp. 19-20; Dep., pp. 109, 113). The plaintiff offers no proof that it was violation of policy or his constitutional rights for his personal mail to be inspected outside of his presence. When asked the reason behind his belief that the policy was being discriminatorily enforced, the plaintiff said he had "heard of maybe one or two people" who had filed lawsuits about jail conditions and "not getting their mail." *Id*. The plaintiff's testimony is not based on

personal knowledge, and what the plaintiff may have heard from other inmates is inadmissible hearsay. Other than his own opinion and naked speculation, the plaintiff offers no admissible evidence that his mail was monitored in a discriminatory or retaliatory manner and motive. *Meyer v. Board of County Com'rs of Harper County, Okla.*, 482 F.3d 1232, 1238 (10th Cir. 2007) ("Mere speculation about the officers' motives could not prevail in summary judgment proceedings."). Finally, the plaintiff does not identify any of the named defendants as personally involved in the monitoring or censoring of his outgoing mail or as having acted intentionally or with deliberate indifference. Summary judgment on this claim is proper for the defendants.

The plaintiff next challenges what he describes as a policy change appearing in the 2008 inmate handbook that prohibited inmates' attorneys from "carrying in/out of . . . jail . . . any mail, notes, packages, money, or any other item of communication between an inmate and any member of the community or other members of the inmate population." (Dk. 167-6, p. 5). The plaintiff interprets this policy as prohibiting him from giving all evidence, notes or information to his attorney that could pertain to his cases. This is not a reasonable interpretation of the policy that is intended only to address an inmate's use of an attorney as a courier to circumvent the facility's control and monitoring of the mail. The plaintiff also testified that this policy has never been enforced against him. (Dk. 167-2, p. 22; Dep., p. 132). Nor has the plaintiff

come forward with any evidence that the policy has been enforced in the manner he has interpreted it. Because the plaintiff has failed to articulate a claim based on a reasonable interpretation of this policy and has failed to show that his rights were actually violated by this policy, these named defendants are entitled to summary judgment on this claim. In his deposition, Mr. Brown also conceded that for the defendants Glen F. Kochanowski, Tina Miller and Captain Alvin Augustine, their personal responsibility for violating his First Amendment rights was limited to their involvement in bringing about this policy change on an attorney's carrying in or out inmate communications. (Dk. 167-2, pp. 21-23; Dep., pp. 127-134). Thus, these named defendants are entitled to summary judgment on all other claims, for the plaintiff has conceded he lacks a factual basis for alleging their individual responsibility on those claims.

<u>Defendant Deborah Price</u>

Mr. Brown testified that he named Price as a defendant because she delivered him a letter that had been opened and he thought this letter "was from the U.S. Department of Justice." (Dk. 167-2, p. 23; Dep., p. 134). According to Brown, there were other times when Price had done "things like that," but he was not sure of the number. *Id.* at 135-36. Mr. Brown's testimony about Officer Price's actions amounts to conclusory assertions because it is speculative and lacks specific factual support. He "thinks" it was a DOJ letter. He believed Officer Price had "done things like that" on other occasions, but he was

32

not sure how many times. The plaintiff's testimony does not establish that Officer Price was even the person responsible for opening any letter, that any of the letters were actually DOJ letters or marked as legal mail, or that she acted intentionally rather than inadvertently or engaged in a pattern or practice of opening his legal mail outside his presence.   *Hall v. Chester*, 2008 WL 4657279 at *3-*4 (D. Kan. Oct. 20, 2008). The defendant Price is entitled to summary judgment on this claim.

<u>Prohibited from Taking Legal Mail to Larned State Hospital</u>

For the last part of 2006 and the first month of 2007, Mr. Brown received treatment at the Larned State Hospital. Plaintiff testified "the defendants—the staff members of Saline County Jail" told him that he had "to leave all of my legal material" and property in the jail because the Larned State Hospital policy would not allow him to bring these things. (Dk. 167-2, pp. 5-6; Dep., pp. 17-18). From the hospital, Brown wrote the jail asking that his legal mail be sent to him. When he was returned to jail on January 30, 2007, Brown submitted two inmate requests for the return of his legal mail, paperwork, and personal items. On Brown's request form dated January 31, 2007, the responding jail officer wrote, "Done." (Dk. 107-2, p. 48).

The defendants seek summary judgment arguing that at most the plaintiff has alleged the jail staff was mistaken about the hospital's policy and that there is no evidence of an intentional deprivation that damaged the

33

plaintiff. The defendants further contend any harm here was "de minimis" that does not rise to a constitutional violation. Finally, the defendants point to the plaintiff's failure to establish which named defendants personally participated in the deprivation of his constitutional rights.

The plaintiff offers no meaningful response to any of the defendants' arguments. The record does not show any evidence of a Saline County Jail policy being applied or enforced here to prevent Brown from taking his legal materials and property with him to the hospital. Nor is there evidence that the jail staff relied on any such jail policy or cited one to the plaintiff. Instead, the plaintiff's testimony and filings only repeat that the jail staff was mistaken about the Larned hospital's policy. He does not allege or offer any evidence that the jail staff acted on an improper motive or deliberate indifference rather than mere inadvertence or negligence. He does not identify or specify the individual defendants responsible for preventing him from taking his things to Larned. These plain facts and the plaintiff's vague allegations cannot be transformed into a claim for a constitutional violation. The defendants are granted summary judgment on this claim.

## State Law Fraud Claim

As laid out in the pretrial order, the plaintiff is claiming the defendants charged for mail never sent and then tried "to void the mail out of their county computer that was not sent." (Dk. 156, p. 4). As a theory of

recovery, the pretrial order summarizes this claim as "charging for mail that was not processed." *Id.* at p. 5.

Kansas law is well settled that "[f]raud is never presumed and must be established by clear and convincing evidence." *Alires v. McGehee*, 277 Kan. 398, Syl. ¶ 1, 85 P.3d 1191 (2004); *see Capital Solutions, LLC v. Konica Minolta Business Solutions U.S.A., Inc.*, 2010 WL 446936 at *10 (D. Kan. 2010) (citing *North Texas Production Credit Ass'n v. McCurtain County Nat. Bank,* 222 F.3d 800, 813 (10th Cir. 2000) ("'clear and convincing' standard for fraud applies at summary judgment stage")); *see also Applied Genetics Intern., Inc. v. First Affiliated Securities, Inc.*, 912 F. 2d 1238, 1243 (10th Cir. 1990). "[T]he elements of an action for fraud include [1] an untrue statement of fact, [2] known to be untrue by the party making it, [3] made with the intent to deceive or with reckless disregard for the truth, [4] upon which another party justifiably relies and acts to his or her detriment." *Bomhoff v. Nelnet Loan Services, Inc.*, 279 Kan. 415, 422, 109 P.3d 1241 (2005) (internal quotation marks and citation omitted). When a plaintiff is without evidence on one of these essential elements, summary judgment for the defendant is proper. *Id.*

Mr. Brown testified in his deposition that his evidence on this claim comes from his interpretation of the Jail's resident account summary kept for him and from his personal understanding of how the voiding process works on "accounting computers." Mr. Brown pointed out on his inmate account

summary that some mailing charges were voided and his account credited. The

defendants' counsel questioned the plaintiff about this fraud claim and his

reading of the account summary:

> Q. Okay. Explain to me what – how this indicates fraud.
> A. Okay. They charged me for all these things that they voided out, okay? And you can't do that on an accounting computer, you can't void anything from an accounting computer, unless you have a hacker or you just – you know, you made a lot of mistakes and you're just trying to cover it up.
> Q. What do you base that belief on?
> A. I base that on my on my own knowledge of computers.
> Q. Okay.
> A. Especially on a county computer, you just can't delete anything you want to delete just because – you have to have orders from somebody higher than this jail to do something like that.
> . . . .
> Q. So are you alleging that these voids indicate that that mail was not sent out?
> A. That's what I'm saying, because that's the only thing that I can come up with. Me and my attorney went over this, and we went and searched for every time that I have written to him, and there was a lot of missing letters.
> . . . .
> Q. Okay. I understand, but do you have any other evidence of state fraud?
> A. Just by what's on there.
> Q. And you believe that voiding out amounts and crediting back amounts is evidence of fraud?
> A. No. I – what I'm looking at is there's a lot of stuff voided there, and you charged me for that. That is state fraud.
> Q. But they credited back your account, correct?
> A. Not all of it they didn't. No they didn't.
> Q. Okay. So your contention is that charged you for postage that didn't go out?
> A. Yes, uh-huh.
> Q. Okay. And the fraud complaint is that they voided it on this account numbering, correct?
> A. Yes.
> Q. Anything else on that aspect, that claim of fraud?

A. no.

(Dk. 167-2, pp. 18-19; Dep., pp. 99-108).

"To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citations omitted). As the quoted testimony plainly demonstrates, the plaintiff offers nothing but his own speculation over what actually happened in the recorded transactions. The plaintiff presumes there are fraudulent activities behind the voided transactions without offering any proof or reasonable inferences to support his naked conclusions. It is nothing but conjecture for the plaintiff to think that the voided transactions mean his mail was never sent, or that his account was never credited for the voided transactions, or that his account was assessed postage charges for mail which was never sent.

The plaintiff offers no evidence of untrue statements that were made by a named defendant and that were known to be untrue by the defendant making it with the intent to deceive or with reckless disregard for the truth. The defendants are entitled to summary judgment on this state law claim of fraud.

IT IS THEREFORE ORDERED that the plaintiff's motions for appointment of counsel (Dks. 180 and 189) are denied;

IT IS FURTHER ORDERED that the plaintiff's motion for "ex-parte

hearing" (Dk. 188) is denied;

IT IS FURTHER ORDERED that the plaintiff's motion to reconsider (Dk. 181) is denied;

IT IS FURTHER ORDERED that the defendants' motion to strike surreply (Dk. 187) is denied;

IT IS FURTHER ORDERED that the plaintiff's motion for leave of the court to file supplemental brief (Dk. 190) is granted;

IT IS FURTHER ORDERED that the defendants' motion to strike supplement (Dk. 195) is granted;

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment (Dk. 166) is granted.

Dated this 19th day of September, 2012, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge